UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

UNITED STATES OF AMERICA,

- against -

**ORDER**
16-CR-406 (MKB)

KIANCIN LEE,

Defendant.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On June 30, 2017, Defendant Kiancin Lee pled guilty to one count of conspiracy to traffic heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(i) and one count of conspiracy to commit kidnapping in violation of 18 U.S.C. § 1201(a)(1) and (c). (Indictment, Docket Entry No. 1; Min. Entry dated June 30, 2017, Docket Entry No. 78.) On May 16, 2019, the Court sentenced Lee to 130 months of imprisonment to be followed by five years of supervised release. (J., Docket Entry No. 197.)

On December 28, 2020, Lee, proceeding *pro se*,[1] filed a motion for compassionate release seeking a reduction of his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) or, in the alternative, release to home confinement under 18 U.S.C. § 3624(c)(2) based on the alleged mishandling of the COVID-19 pandemic by the U.S. Penitentiary, Canaan ("USP Canaan"), where he is incarcerated, and based on his rehabilitation during the fifty-two months of time he has served. (Def.'s Mot. 1–2, Docket Entry No. 238.)

---

[1] In his motion for compassionate release, Lee requested that the Court appoint him counsel in the event that any hearing or other legal proceedings are required for which counsel is needed to prepare. (Def.'s Mot. to Reduce Sentence ("Def.'s Mot.") 11, Docket Entry No. 238.) The Court appointed counsel for Lee on January 12, 2021. (Appointment of Attorney, Docket Entry No. 239.)

The government opposes Lee's motion, arguing that he has not shown extraordinary and compelling reasons warranting his release and that, in any event, the 18 U.S.C. § 3553(a) factors warrant his continued detention. (Gov't Mem. in Opp'n to Def.'s Mot. ("Gov't Opp'n") 1, Docket Entry No. 251.)

For the reasons discussed below, the Court denies Lee's motion.

I. **Background**

a. **Guilty plea and sentencing**

In June of 2014, Lee and others were members of a Queens, New York-based heroin trafficking crew that imported heroin from Ecuador and distributed it throughout the New York City area. (Presentence Investigation Report ("PSR") ¶ 3, Docket Entry No. 121.) The drug connection in Ecuador would mail packages of heroin every few weeks to parcel stores in Brooklyn and Queens, where members of the crew, including John Doe #1, would pick up the drugs and distribute them to various dealers. (*Id.*) Lee packaged a portion of the drugs, sold that portion to other distributors, and wired drug proceeds to drug contacts in Ecuador. (*Id.*)

On February 6, 2015, John Doe #1 was arrested after picking up a heroin parcel at a parcel store in Queens. (*Id.* ¶¶ 4, 8.) Shortly after he was released from custody, he told the leader of the crew, Lee's codefendant Gonzalo Erick Aguilar Vargas ("Aguilar"), that he had thrown the heroin parcel on the ground when the police were chasing him, and Aguilar demanded that they meet to discuss the lost parcel. (*Id.* ¶¶ 8–9.) When John Doe #1 and his girlfriend Jane Doe #1 were taken to meet Aguilar, they were forced into a car and driven to a secluded street, where Lee and others pushed John Doe #1 to the ground and violently beat him, including Lee hitting John Doe #1 in the head and face with a firearm that Lee had brought with him. (*Id.* ¶¶ 10–12.) At some point, John Doe #1 escaped and ran. (*Id.*) When the group was

unable to locate him, they forced Jane Doe #1 into the back seat of a car, made her put a jacket over her face so that she could not see them, and dropped her off in Queens, photographing her license and stating that if anything happened to them, they knew where she lived and would come look for her. (*Id.* ¶¶ 12–14.)

On June 30, 2017, Lee pled guilty to one count of conspiracy to traffic heroin and one count of conspiracy to commit kidnapping, and, on May 16, 2019, the Court sentenced Lee to 130 months of imprisonment to be followed by five years of supervised release. (Min. Entry dated June 30, 2017; J.) Lee is currently serving his term of incarceration at USP Canaan in Wayne County, Pennsylvania, with a tentative release date of October 2, 2025. (Def.'s Mot. 2.)

### b. Compassionate release application

On December 28, 2020, Lee filed a motion for compassionate release seeking a reduction of his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) or, in the alternative, release to home confinement under 18 U.S.C. § 3624(c)(2).[2] (*Id.* at 1, 4.) In support, Lee, who is now twenty-eight years old, (*id.* at 2), argues that extraordinary and compelling reasons for a reduction exist because of the risk of exposure to the coronavirus in the prison setting and the USP's "slow response and failure to comply" with the COVID-19 guidance from the Centers for Disease Control regarding social distancing, mask wearing, sanitation, and testing, (*id.* at 3–8).

---

[2] As noted above, the Court appointed counsel for Lee on January 12, 2021. (Appointment of Attorney.) The government did not respond to Lee's initial motion, and additional submissions in support of Lee's motion were not forthcoming after counsel was appointed. Accordingly, the Court ordered the government to respond to Lee's motion, and the Court received the government's response on May 13, 2021. (Order dated May 6, 2021; Gov't Opp'n.)

3

In addition, Lee argues that his rehabilitation over the course of his fifty-two months of incarceration weighs in favor of release.[3] (*Id.* at 7–10.)

The government opposes the motion and argues that Lee's proffered reasons for release are not "'extraordinary and compelling' under 18 U.S.C. § 3582(c)(1)(A), the [U.S. Sentencing] Guidelines, or any other authority." (Gov't Opp'n 3.) In support, the government argues that with respect to USP's handling of the pandemic, (1) "a generalized risk of potential exposure . . . cannot constitute an extraordinary and compelling reason for release," (2) "COVID-19 is well-controlled at . . . USP Canaan," where "no inmates and one staff member currently have COVID-19," and (3) while Lee tested positive for COVID-19 in November of 2020, "the government is not aware of any evidence that [he] suffers from any high-risk health conditions or is currently facing any health concerns." (*Id.*) In addition, with respect to Lee's purported rehabilitation, the government argues that (1) "rehabilitation ordinarily does not suffice to warrant relief," (2) Lee "has been sanctioned on two occasions during his incarceration," including once in 2016 for fighting and once in 2017 for "being unsanitary and untidy," and (3) Lee has not articulated a release plan adequate to ensure the Court that he would not present a danger to the public upon release.[4] (*Id.* at 3–4.) Finally, the government argues that even if Lee had shown extraordinary and compelling circumstances warranting his release, the 18 U.S.C. § 3553 factors weigh against

---

[3] Lee has successfully completed his GED and numerous other rehabilitative programs while incarcerated. (*See, e.g.*, Def.'s Mot. 2, 9, 14–15, 24–45 (certificates).) In addition, if released, he "wishes to help the mother of his twins," one of whom has autism, "in every way," and "to stay with his cousin and seek . . . his old job." (*Id.* at 10.)

[4] The government also argues that Lee "fails to argue that the applicable § 3553(a) factors warrant a sentence reduction," and that "the Court should summarily deny the motion" on this basis. (Gov't Opp'n 4.) However, the Court understands Lee's arguments about his rehabilitation to be arguments that the "need for the sentence imposed" is no longer as great. *See* 18 U.S.C. § 3553(a)(2).

4

release because Lee was an active participant in a violent kidnapping and related heroin trafficking conspiracy, "beating John Doe #1, pulling the trigger of a firearm placed against John Doe #1's head,[5] and participating in the continued restraint and threats against Jane Doe #1," and the offenses for which he is now serving a significant sentence "represent an escalation from [his] already significant criminal past." (*Id.* at 5.)

## II. Discussion

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). Pursuant to section 3582(c)(1)(A)(i), "a district court 'may reduce' the term of a defendant's imprisonment 'if it finds that . . . extraordinary and compelling reasons warrant such a reduction.'" *United States v. Roney*, 833 F. App'x 850, 852 (2d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)); *see also United States v. Fernandez*, No. 20-CR-2467, --- F. App'x ---, ---, 2021 WL 1749725, at *1 (2d Cir. May 4, 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).

Under section 3582(c), and as relevant here, courts may modify a previously imposed sentence where:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of [thirty] days from the receipt of such a request by the warden of the defendant's facility,[6] whichever is earlier,

---

[5] Whether Lee pulled the trigger of a firearm placed against John Doe #1's head is a disputed fact that the Court discounted at sentencing. (Sentencing Tr. 8:12–8:17, Docket Entry No. 200.)

[6] It is unclear whether Lee has exhausted his administrative remedies. Although he acknowledges that "a petitioner may file a motion after he 'has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the petitioner's behalf or the lapse of [thirty] days from the receipt of such request by the warden of the petitioner['s]

5

> may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that —
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least [seventy] years of age, has served at least [thirty] years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i)–(ii). Thus, even if a district court decides that a movant has shown extraordinary and compelling reasons for compassionate release, the court must also consider whether the factors set forth in 18 U.S.C. § 3553 support release. *See United States v. Butler*, 845 F. App'x 74, 81 (2d Cir. 2021) ("[T]he district court acted well within its discretion in concluding that, even if extraordinary and compelling circumstances existed for his release, [the petitioner's] compassionate release motion should be denied because his release was not consistent with the [s]ection 3553(a) factors in this case."); *Roney*, 833 F. App'x at 853 ("We need not decide whether [the appellant] has proffered an extraordinary and compelling reason that warrants his release . . . because, even assuming *arguendo* that he has, we discern no abuse of discretion in the district court's conclusion that release is nevertheless unwarranted upon consideration of the [section] 3553(a) factors.").

---

facility,'" he does not state whether he exhausted his administrative remedies and has not attached to his motion any evidence of exhaustion. (*See* Def.'s Mot. 11 (quoting 18 U.S.C. § 3582(c)(1)(A)).)

Although the Court takes seriously the threat posed by COVID-19 to incarcerated individuals and sympathizes with Lee, who has already contracted and recovered from COVID-19 once while incarcerated, (*see generally* Def.'s Mot. 6; Def.'s Medical Records, annexed to Gov't Opp'n as Ex. 1, Docket Entry No. 251-1), the situation at USP appears to be under control, and a generalized fear of contracting COVID-19 does not constitute extraordinary and compelling circumstances warranting release, *see, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering [the Bureau of Prison's] statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Otrosinka*, No. 12-CR-300, 2020 WL 5628060, at *4 (W.D.N.Y. Sept. 21, 2020) (collecting cases). In addition, even assuming Lee has shown extraordinary and compelling circumstances warranting his release, the requested relief is inconsistent with the section 3553(a) factors. While the Court recognizes Lee's efforts to engage in rehabilitation since his sentencing, Lee was the most violent participant in a drug-related kidnapping that represented an escalation from his already significant criminal history, which includes armed robbery, a shooting, and a drug offense. (Sentencing Tr. 16:17; Gov't Opp'n 5; PSR ¶¶ 71–74.) In addition, in sentencing Lee to 130 months of incarceration, the Court departed significantly from the U.S. Sentencing Guidelines' range of 262 to 327 months based in large part on its consideration of the section 3553(a) factors.[7] (PSR ¶¶ 105, 120.) Lee has served less than half of his sentence, and a further reduction would not adequately "reflect the

---

[7] As the Court explained at sentencing, the parties agreed on a lower guideline calculation than that recommended in the PSR. (PSR ¶ 120; Sentencing Tr. 5:20–6:3, 16:3–16:10.) In addition, Lee's criminal history category was overstated, and the Court took into account, among other things, that prior to his arrest, Lee was the sole provider for his girlfriend and two children, one of whom has autism. (*See generally* Sentencing Tr. 15:20–19:1.)

seriousness of the offense, . . . promote respect for the law, [or] . . . provide[] just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

## III. Conclusion

Accordingly, for the reasons explained above, the Court denies Lee's motion for compassionate release and denies his request, in the alternative, to serve the remainder of his sentence under home detention.

Dated: May 21, 2021
      Brooklyn, New York

                      SO ORDERED:

                          s/ MKB

                      MARGO K. BRODIE
                      United States District Judge