UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

UNITED STATES OF AMERICA,

- against -

**ORDER**
16-CR-406 (MKB)

KIANCIN LEE,

Defendant.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On June 30, 2017, Defendant Kiancin Lee pled guilty to one count of conspiracy to traffic heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(i) and one count of conspiracy to commit kidnapping in violation of 18 U.S.C. § 1201(a)(1) and (c). (Indictment, Docket Entry No. 1; Min. Entry dated June 30, 2017, Docket Entry No. 78.) On May 16, 2019, the Court sentenced Lee to 130 months of imprisonment to be followed by five years of supervised release. (J., Docket Entry No. 197.)

Lee, proceeding *pro se*, filed a motion for compassionate release on December 28, 2020, seeking a reduction of his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) or, in the alternative, release to home confinement under 18 U.S.C. § 3624(c)(2) based on the alleged mishandling of the COVID-19 pandemic by the U.S. Penitentiary, Canaan ("USP Canaan"), where he was then incarcerated, and based on his rehabilitation during the fifty-two months of time he had then served. (Def.'s Mot. to Reduce Sentence ("Def.'s Mot.") 1–2, Docket Entry No. 238.) On May 21, 2021, the Court denied Lee's motion (the "May Order"). (May Order 8, Docket Entry No. 255.) On June 3, 2021, appointed counsel for Lee filed a motion for reconsideration of the May Order and a supplemental motion for compassionate release. (Def.'s

Mot. for Recons. 1–2, Docket Entry No. 256; Def.'s Suppl. Mot. to Reduce Sentence ("Def.'s Suppl. Mot."), annexed to Def.'s Mot. for Recons., Docket Entry No. 256-1.) The Government "has no objection to the Court reviewing the [s]upplemental [m]otion in determining whether to reconsider [the May Order]" but argues that the motion should be denied "on the same grounds" on which the Court denied Lee's initial motion. (Gov't Opp'n to Mot. for Recons. ("Gov't Opp'n") 1, Docket Entry No. 259.)

For the reasons discussed below, the Court denies Lee's motion.

I. **Background**

   a. **Guilty plea and sentencing**

In June of 2014, Lee and others were members of a Queens, New York-based heroin trafficking crew that imported heroin from Ecuador and distributed it throughout the New York City area. (Presentence Investigation Report ("PSR") ¶ 3, Docket Entry No. 121.) The drug connection in Ecuador would mail packages of heroin every few weeks to parcel stores in Brooklyn and Queens, where members of the crew, including John Doe #1, would pick up the drugs and distribute them to various dealers. (*Id.*) Lee packaged a portion of the drugs, sold that portion to other distributors, and wired drug proceeds to drug contacts in Ecuador. (*Id.*)

On February 6, 2015, John Doe #1 was arrested after picking up a heroin parcel at a parcel store in Queens. (*Id.* ¶¶ 4, 8.) Shortly after he was released from custody, he told the leader of the crew, Lee's codefendant Gonzalo Erick Aguilar Vargas ("Aguilar"), that he had thrown the heroin parcel on the ground when the police were chasing him, and Aguilar demanded that they meet to discuss the lost parcel. (*Id.* ¶¶ 8–9.) When John Doe #1 and his girlfriend Jane Doe #1 went to meet Aguilar, they were forced into a car and driven to a secluded street, where Lee and others pushed John Doe #1 to the ground and violently beat him, including

Lee hitting John Doe #1 in the head and face with a firearm that Lee had brought with him. (*Id.* ¶¶ 10–12.) At some point, John Doe #1 escaped and ran. (*Id.*) When the group was unable to locate him, they forced Jane Doe #1 into the back seat of a car, made her put a jacket over her face so that she could not see them, and dropped her off in Queens, photographing her license and stating that if anything happened to them, they knew where she lived and would find her. (*Id.* ¶¶ 12–14.)

On June 30, 2017, Lee pled guilty to one count of conspiracy to traffic heroin and one count of conspiracy to commit kidnapping, and, on May 16, 2019, the Court sentenced Lee to 130 months of imprisonment to be followed by five years of supervised release. (Min. Entry dated June 30, 2017; J.) Lee is currently serving his term of incarceration at Federal Correctional Institute Ray Brook ("FCI Ray Brook") in Ray Brook, New York, with a tentative release date of October 2, 2025. (Def.'s Mot. 2; Letter with Health Update, Docket Entry No. 261.)

### b. Lee's initial compassionate release motion

On December 28, 2020, Lee, proceeding *pro se*, filed a motion for compassionate release seeking a reduction of his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) or, in the alternative, release to home confinement under 18 U.S.C. § 3624(c)(2). (Def.'s Mot. 1, 4.) In support, Lee argued that extraordinary and compelling reasons for a reduction exist because of the risk of exposure to the coronavirus in the prison setting and USP Canaan's "slow response and failure to comply" with the COVID-19 guidance from the Centers for Disease Control and Prevention. (*Id.* at 3–8.) In addition, Lee argued that his rehabilitation over the course of his then fifty-two months of incarceration weighed in favor of release. (*Id.* at 7–10.)

In his motion for compassionate release, Lee requested that the Court appoint him counsel in the event that any hearing or other legal proceedings are required for which counsel is

3

needed to prepare. (*Id.* at 11–12.) The Court appointed counsel for Lee on January 12, 2021. (Appointment of Attorney, Docket Entry No. 239.) The Government did not respond to Lee's initial motion, and additional submissions in support of Lee's motion were not forthcoming after the Court appointed counsel. Therefore, on May 6, 2021, the Court ordered the Government to respond to Lee's *pro se* motion. (Order dated May 6, 2021.) In its response, the Government argued that Lee failed to show extraordinary and compelling circumstances warranting release and that, in any event, the 18 U.S.C. § 3553(a) factors weigh against release. (Gov't Opp'n to Def.'s Mot. 3, 5, Docket Entry No. 251.)

On May 21, 2021, the Court denied Lee's motion, finding that "the situation at USP [Canaan] appears to be under control, and a generalized fear of contracting COVID-19 does not constitute extraordinary and compelling circumstances warranting release." (May Order 7.) In addition, the Court found that "even assuming Lee has shown extraordinary and compelling circumstances warranting his release, the requested relief is inconsistent with the section 3553(a) factors." (*Id.* at 7–8.)

      **c.   Motion for reconsideration and the supplemental motion**

On June 3, 2021, appointed counsel for Lee filed a motion for reconsideration of Lee's compassionate release motion, attaching a supplemental motion for compassionate release for the Court's consideration (the "Supplemental Motion") and explaining that, due to a docketing error, the Court never received the Supplemental Motion, which counsel prepared and mistakenly believed she had filed on May 3, 2021. (Def.'s Mot. for Recons. 1–2; Def.'s Suppl. Mot.) On June 4, 2021, the Court directed the Government to respond to Lee's motion for reconsideration and the Supplemental Motion attached to it. (Order dated June 4, 2021.) On June 18, 2021, the Government filed its response. (Gov't Opp'n.)

4

Lee, who was diagnosed with COVID-19 on November 30, 2020, and has not been tested again since, contends in his Supplemental Motion that he is still experiencing COVID-19 symptoms, including "constant fatigue, weakness, chills, shortness of breath, aching muscles and joints, swollen and bleeding gums . . . , a worsening hernia, anxiety and insomnia . . . , and sharp pains in his heart," and that he "has requested medical care on numerous occasions" but has been told repeatedly that what he is experiencing is normal and "they could give him nothing." (Def.'s Suppl. Mot. 4; Def.'s Medical Records 12, annexed to Gov't Opp'n to Def.'s Mot. as Ex. 1, Docket Entry No. 251-1.)  Lee argues that the Bureau of Prisons' "inability to control COVID-19 outbreaks" and his "ongoing, untreated COVID-19 infection" present extraordinary and compelling circumstances warranting release.  (Def.'s Suppl. Mot. 6.)  In addition, he argues that the section 3553(a) factors support release to home confinement[1] because he has "abandoned the gang culture," "detoxed from drugs," "earned his GED and completed numerous programs," "joined organizations that offer inmates assistance on their release," and "stayed out of trouble"; he "appears still to be infected with COVID-19" and thus "poses a greater threat to his fellow inmates . . . than he would to the community if released"; "[t]he lack of medical care, the restrictive conditions of confinement, and the lack of programming make [his] incarceration far more punitive than rehabilitative"; and "the sentencing purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness." (*Id.* at 10–11 (quoting Def.'s Suppl. Sentencing Mem. 4, Docket Entry No. 196).)  Finally, Lee argues that he has a "safe and viable post-release quarantine plan," which involves living with his cousin, who would provide him "transportation to medical appointments" and food, "get a landline or cell phone as

---

[1] Although Lee's initial motion sought a reduction of his sentence to time served or, in the alternative, release to home confinement, his Supplemental Motion seeks only release to home confinement.  (*See generally* Def.'s Suppl. Mot.)

directed" to facilitate Lee's supervision, and connect Lee with his "friends in construction who have agreed to give . . . Lee a job." (*Id.* at 11–12.)

The Government argues that the Court should deny Lee's motion for reconsideration and Supplemental Motion "on the same grounds" on which it denied Lee's *pro se* motion. (Gov't Opp'n 1.)  In support, the Government argues that, like Lee's *pro se* motion, his Supplemental Motion "relies on principally two grounds" — namely, (1) Lee's "positive COVID-19 test in November [of] 2020 and the alleged mishandling of the COVID-19 pandemic" and (2) Lee's "purported rehabilitation" — but neither ground constitutes extraordinary and compelling circumstances warranting release. (*Id.* at 2.)  In addition, the Government argues that "[n]othing raised in the Supplemental Motion changes" the Court's conclusion in the May Order that, "even assuming Lee has shown extraordinary and compelling circumstances . . . , the requested relief is inconsistent with the section 3553(a) factors." (*Id.* (quoting May Order 7).)

## II.  Discussion

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020).  Under 18 U.S.C. § 3582(c), and as relevant here, courts may modify a previously imposed sentence where:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of [thirty] days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that —
>
> (i)  extraordinary and compelling reasons warrant such a reduction; or

6

>   (ii) the defendant is at least [seventy] years of age, has served at least [thirty] years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
>   and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i)–(ii).

Pursuant to section 3582(c)(1)(A)(i), a district court may "reduce a term of imprisonment or release a defendant" if it "find[s] that . . . extraordinary and compelling reasons warrant such a reduction." *United States v. Jones*, --- F.4th ---, ---, 2021 WL 5312996, at *2 (2d Cir. Nov. 16, 2021) (per curiam) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)); *see also United States v. Cummings*, --- F. App'x ---, ---, 2021 WL 4142844, at *1 (2d Cir. Sept. 13, 2021) (same); *United States v. DiBiase*, 857 F. App'x 688, 688–89 (2d Cir. 2021) (same); *United States v. Fernandez*, 853 F. App'x 730, 731–32 (2d Cir. 2021) (same); *United States v. Roney*, 833 F. App'x 850, 852 (2d Cir. 2020) (same). "[D]istrict courts are not confined to those reasons set forth by the BOP Director in evaluating compassionate release motions brought by defendants and instead are free 'to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them.'" *Jones*, --- F.4th at ---, 2021 WL 5312996, at *2 n.3 (quoting *United States v. Brooker*, 976 F.3d 228, 235–37 (2d Cir. 2020)); *United States v. Souza*, --- F. App'x ---, ---, 2021 WL 3871262, at *2 (2d Cir. Aug. 31, 2021) ("[T]he Sentencing Commission's policy statements do not 'constrain district courts' discretion to consider whether any reasons are extraordinary and compelling.'" (quoting *Brooker*, 976 F.3d at 236)).

7

"Even if 'extraordinary and compelling' circumstances exist, however, the court must also consider 'the factors set forth in section 3553(a) to the extent that they are applicable' before it can reduce the defendant's sentence." *Jones*, --- F.4th at ---, 2021 WL 5312996, at *2 (quoting 18 U.S.C. § 3582(c)(1)(A)) (noting that "extraordinary and compelling reasons are necessary — but not sufficient — for a defendant to obtain relief" and that "a district court's 'reasonable evaluation of the [s]ection 3553(a) factors' is 'an alternative and independent basis for denial of compassionate release'"); *see also Souza*, --- F. App'x at ---, 2021 WL 3871262, at *2 (affirming district court's ruling that "even if [a defendant]'s medical conditions demonstrated extraordinary and compelling reasons for release, 'the factors set forth in [section 3553] militate toward continued confinement'" (quoting *United States v. Bolino*, No. 06-CR-806, 2020 WL 4749807, at *2 (E.D.N.Y. Aug. 17, 2020))); *United States v. Butler*, 845 F. App'x 74, 77 (2d Cir. 2021) ("[T]he district court acted well within its discretion in concluding that, even if extraordinary and compelling circumstances existed for his release, [the petitioner's] compassionate release motion should be denied because his release was not consistent with the [s]ection 3553(a) factors in this case."); *Roney*, 833 F. App'x at 853 ("We need not decide whether [the appellant] has proffered an extraordinary and compelling reason that warrants his release . . . because, even assuming *arguendo* that he has, we discern no abuse of discretion in the district court's conclusion that release is nevertheless unwarranted upon consideration of the [section] 3553(a) factors.").

Although the Court takes seriously the threat posed by COVID-19 to incarcerated individuals and sympathizes with Lee, who has already contracted COVID-19 once while incarcerated, (*see* Def.'s Medical Records 12), the Court remains of the opinion that the requested relief is inconsistent with the section 3553(a) factors. In support of his argument that

the section 3553(a) factors support his release to home confinement, as well as his argument that extraordinary and compelling reasons exist for his release, Lee relies heavily on his contention that he is still experiencing COVID-19 symptoms and being denied medical care. However, his medical records reflect that upon his initial diagnosis in November of 2020, Lee was asymptomatic, (*id.*), that he denied symptoms of COVID-19 other than body aches in the weeks following his diagnosis, (*id.* at 6, 8), that he received the Johnson & Johnson vaccine on June 4, 2021, (Def.'s Updated Medical Records 58, annexed to Letter with Health Update as Ex. A, Docket Entry No. 262-1),[2] that he was asymptomatic on June 23 and July 9, 2021, (Def.'s Updated Medical Records 47–48), and that he recently tested negative for COVID-19 on October 14, 2021, (Def.'s Updated Medical Records 12, 68). While Lee's medical records do indicate complaints of hernia pain, it appears he has been receiving medical attention for this issue, as he was prescribed ibuprofen and a hernia belt in mid-February of 2021, (Def.'s Medical Records 2–3), recently had a surgery to repair the hernia on October 19, 2021, (Def.'s Updated Medical Records 10), and has had several follow-up visits to Health Services to address swelling and pain that has since developed in the area, (*see* Def.'s Updated Medical Records 2–5).[3] In addition, as

---

[2] On November 1, 2021, the Court directed the parties to submit updated medical records for Lee. (Order dated Nov. 1, 2021; Letter with Health Update; Def.'s Updated Medical Records.)

[3] On November 3, 2021, "Lee wrote to counsel that he had just seen the doctor, who explained that it 'is most likely that they are going to operate me [sic] again because the back of my fallopian tube busted or something went wrong in my surgery.'" (Letter with Health Update.) Apart from his hernia pain, Lee maintains that he has been experiencing "sharp pains in his heart" for which he "has requested [and been denied] medical care on numerous occasions." (Def.'s Suppl. Mot. 4.) However, his medical records do not reflect any complaints of sharp heart pains. (*See* Def.'s Medical Records; Def.'s Updated Medical Records; *see also* Def.'s Suppl. Mot. 4 (noting that the Centers for Disease Control and Prevention has advised that an individual experiencing "[p]ersistent pain or pressure in the chest" should seek emergency medical care immediately (citing *Symptoms of COVID-19*, Ctrs. for Disease Control &

9

the Court explained in the May Order, "[w]hile the Court recognizes Lee's efforts to engage in rehabilitation since his sentencing, Lee was the most violent participant in a drug-related kidnapping that represented an escalation from his already significant criminal history, which includes armed robbery, a shooting, and a drug offense," and "in sentencing Lee to 130 months of incarceration, the Court departed significantly from the U.S. Sentencing Guidelines' range of 262 to 327 months based in large part on its consideration of the section 3553(a) factors."[4]  (May Order 7.)  Lee has still served less than half of his sentence, and a further reduction would not adequately "reflect the seriousness of the offense, . . . promote respect for the law, [or] . . . provide[] just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

### III. Conclusion

Accordingly, for the reasons explained above, the Court denies Lee's motion for reconsideration and supplemental motion for compassionate release.

Dated: November 30, 2021
       Brooklyn, New York

                            SO ORDERED:

                            s/ MKB

                            MARGO K. BRODIE
                            United States District Judge

---

Prevention (last updated Feb. 22, 2021), https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html)).)

[4] As the Court explained at sentencing, the parties agreed on a lower guideline calculation than that recommended in the PSR.  (PSR ¶ 120; Sentencing Tr. 5:20–6:3, 16:3–16:10.)  In addition, Lee's criminal history category was overstated, and the Court took into account, among other things, that prior to his arrest, Lee was the sole provider for his girlfriend and two children, one of whom has autism.  (*See generally* Sentencing Tr. 15:20–19:1.)